**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

**JARVIS CARTER**
    33 Murray Crossing Blvd.
    Ludowici, Georgia 31316

    *Plaintiff*

v.

**ST. MARY'S COUNTY, MD**            **CASE NO.:** _____
    <u>Serve On</u>:
    Buffy Giddens, Esq.             **Jury Trial Demanded**
    P.O. Box 653
    41770 Baldridge Street
    Leonardtown, Maryland 20650

and

**ST. MARY'S COUNTY SHERIFF**
**STEVEN A. HALL (in his Individual and**
**Official capacities)**
    23150 Leonard Hall Drive
    Leonardtown, Maryland 20650
and

**STATE OF MARYLAND**
    <u>Serve On</u>:
    The Honorable Dereck E. Davis
    State of Maryland Treasurer's Office
    80 Calvert Street
    Annapolis, Maryland 21401

    *Defendants*

<u>**COMPLAINT AND JURY DEMAND**</u>

Comes now, Plaintiff Jarvis Carter, by and through his attorneys, Timothy F. Maloney,

Kevin S. Redden, and the law firm of Joseph Greenwald and Laake P.A. and sues Defendants St.

Mary's County, Maryland, St. Mary's County Sheriff Steven A. Hall, and the State of Maryland for cause, claims, and damages, and states as follows:

## INTRODUCTION

Defendants St. Mary's County, Sheriff Hall, and the State of Maryland (collectively referred to as "Defendants") falsely imprisoned Plaintiff Jarvis Carter for a crime he did not commit – the murder of Dannico T. Hall on April 28, 2022 (the "Shooting"). Mr. Carter was entirely uninvolved in the Shooting and was nowhere near the crime when it occurred. Nonetheless, Defendants identified Mr. Carter as the sole suspect and arrested him on April 30, 2022. He was then detained in St. Mary's County Detention Center for the next 26 days.

But Defendants obtained exculpatory evidence exonerating Mr. Carter, including his DNA and iPhone, just days after his arrest. They failed review and/or test the exculpatory evidence until weeks after it was collected and allowed Mr. Carter to remain imprisoned for nearly a month. When Defendants finally reviewed Mr. Carter's cell site location and DNA, each proved that he was not involved in the Shooting, as he had maintained throughout his detention. Mr. Carter was finally released on May 26, 2022, after his constitutional rights had been severely violated.

Defendants cannot justify their weeks–long detention of Mr. Carter and their failure to review the exculpatory evidence in their possession. Mr. Carter's constitutional rights were disregarded in entirety, and Defendants must be held accountable.

## JURISDICTION AND VENUE

1.     The events giving rise to this action occurred in the State of Maryland, specifically within St. Mary's County, Maryland.

2.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because certain claims made by Plaintiff allege a violation of 42 U.S.C. § 1983, and under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and because the parties are diverse. The Court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367.

3.     Venue is proper in this Court as the acts, events, and omissions giving rise to Plaintiff's claims occurred in St. Mary's County, Maryland.

## PARTIES

4.     Plaintiff Jarvis Carter is the aggrieved party in this suit and currently resides at 33 Murray Crossing Blvd., Ludowici, Georgia 31316.

5.     Defendant State of Maryland (the "State") employs county sheriffs as state constitutional officers subject to the control of the Maryland General Assembly. *See Rucker v. Harford Cty.*, 316 Md. 275, 281 (1989).  Additionally, county sheriffs perform certain law enforcement, security, and other functions on behalf of their respective county governments, including that of St. Mary's County. As such, county sheriffs perform both state and county functions and, through their actions as hybrid officers of both entities, subject both the State and their respective counties to liability.

6.     Defendant St. Mary's County, Maryland (the "County") is a municipal corporation organized under the provisions of Art. XI-A of the Maryland Constitution.  The County is properly a defendant to this action as it has a statutory obligation under Md. Code Ann. § 9-108 of the State Finance and Procurement Article, to insure, defend, and indemnify for torts committed by any sheriff or deputy sheriff when they purport to have performed a law

3

enforcement function, and because the sheriff and deputy sheriffs perform functions on behalf of both the County and the State.

7.     Sheriff Steven A. Hall is the Sheriff of St. Mary's County, Maryland and is a dual agent of the State and St. Mary's County when acting in his capacity as Sheriff of St. Mary's County. Sheriff Hall was involved in the events giving rise to this action, and at all relevant times performed duties and functions within the scope of his employment with St. Mary's County Sheriff's Office and, by extension, the State of Maryland and St. Mary's County, Maryland. Plaintiff sues Sheriff Hall in both his individual and official capacities.

## NOTICE

8.     On May 15, 2023, Plaintiff, pursuant to Md. Code Ann., Cts. & Jud. Proc. § 5-304 *et seq.*, notified Defendants St. Mary's County and Sheriff Hall of Mr. Carter's tort claim. (Ex. 1, Return Receipt dated May 15, 2023).

9.      On May 16, 2023, Plaintiff, pursuant to Md. Code Ann., State Gov't § 12-101 *et seq.*, notified Defendant State of Maryland of Mr. Carter's tort claims. (Ex. 2, Return Receipt dated May 16, 2023).

## FACTS COMMON TO ALL COUNTS

10.     On April 28, 2022, Danicco T. Hall was tragically shot by two individuals at 46753 Marshall Boulevard Lexington Park, Maryland 20653.

11.     Mr. Carter was not involved in the Shooting in any way and was not near the area of the Shooting when it occurred.

12.     Nonetheless, Defendants immediately identified Mr. Carter as the only suspect and arrested him on April 30, 2022.

13.    On May 1, 2022, Mr. Carter was charged with Attempted 1st Degree Murder, Attempted 2nd Degree Murder, 1st Degree Assault, Second Degree Assault, Handgun on Person, Use of a Firearm in a Crime of Violence, and Reckless Endangerment. (Ex. 9, Charge Summary dated May 1, 2022); (Ex. 10, Statement of Charges).

14.    Mr. Carter was wholly compliant with law enforcement throughout his detention and repeatedly informed Defendants that he was uninvolved in the Shooting.

15.    He provided detailed information regarding his whereabouts at the time of the Shooting and advised Defendants that, on the day of the Shooting, he was driven to work by a co-worker.

16.    He then informed Defendants that he walked to a nearby Shell station after his shift, which ended at approximately 4:00 p.m., before spending time with his minor child for the remainder of the evening.

17.    He advised the Defendants that he and his minor child went to the home of Mr. Carter's mother, located at the Indian Bridge Apartments, in the early evening before Mr. Carter returned to his residence at approximately 7:30 p.m.

18.    Mr. Carter's mother and significant other both confirmed that he was in fact with his minor child during the time of the Shooting and that each had seen him that day.

19.    Defendants disregarded Mr. Carter's truthful alibi and attempted to coerce a false admission from him by asking "why he went to Queen Ann Apartments" – the location of the Shooting – on April 28, 2022.

20.    This was a plain attempt to elicit a false admission from Mr. Carter in order to implicate him in the Shooting.

21.    Mr. Carter was not deceived and forcefully stated that he had not been at the Queen Ann Apartments that day.

22.    In fact, he stated that he had not been to the Queen Ann Apartments in weeks.

23.    Mr. Carter was telling the truth.

24.    Mr. Carter also informed the Defendants that he was entirely unaware of the Shooting until he learned about it hours later on Facebook.

25.    Nonetheless, Defendants did not attempt to identify or investigate any other suspects.

26.    On April 29, 2022, Defendants obtained a warrant to search and seize Mr. Carter's Apple iPhone and DNA. (Ex. 4, Warrant Return dated Apr. 30, 2022).

27.    Defendants executed the warrant on April 30, 2022, arrested Mr. Carter, and took possession of his iPhone and DNA. (*Id.*); (Ex. 3, Chain of Custody of iPhone)

28.    His iPhone memorialized, among other things, his location, text messages, and calls.

29.    Mr. Carter also shared his location with his significant other via his iPhone. Her iPhone was also seized by Defendants.

30.    When interviewed by Defendants, Mr. Carter's significant other confirmed his whereabouts at the time of the Shooting and confirmed that he was not present at the crime scene when the Shooting occurred.

31.    Defendants disregarded this testimony and continued to detain Mr. Carter as the only suspect.

32.    Defendants attempted to perform a forensic download of Mr. Carter's iPhone on May 3, 2022. (Ex. 8, Crime Lab Report of May 3, 2022 Download Attempt).

33.     Their attempt was unsuccessful because the program they used to download the iPhone's data was incompatible with Mr. Carter's phone, and because the iPhone was locked via security passcode. (*Id.*).

34.     Defendants, for reasons unknown, waited 13 days to request the passcode from Mr. Carter and finally did so on or about May 16, 2022.

35.     Meanwhile, Mr. Carter remained detained in the St. Mary's County Detention Center for a crime he did not commit even though Defendants had exculpatory evidence – Mr. Carter's cell site location and DNA – in their possession, custody, and control.

36.     Mr. Carter, through his defense attorney, voluntarily provided the iPhone's passcode to Defendants on May 22, 2022 in order to prove his innocence.

37.     Defendants performed a forensic download of Mr. Carter's iPhone two days later on May 24, 2022. (Ex. 7, Crime Lab Report of May 24, 2022 Download Attempt).

38.     Defendants reviewed the download on May 25, 2022. (*Id.*).

39.     The data retrieved from Mr. Carter's iPhone confirmed what Mr. Carter had repeatedly told the Defendants: he was not at the crime scene on the day of the Shooting and was not involved in any way. (*Id.*).

40.     Defendants also failed to test Mr. Carter's DNA for weeks after it was collected.

41.     Like the iPhone, Mr. Carter's DNA evidence would have exonerated Mr. Carter, and in fact did so, but was left untested.

42.     Defendants finally tested Mr. Carter's DNA on June 21, 2022 – nearly two months after his arrest, and after he was released based on the data taken from his iPhone. (Ex. 11).

43.    The DNA test conclusively "excluded [Mr. Carter] from the major contributor DNA profile" left by the perpetrator of the Shooting. (Ex. 11, DNA Test Results dated June 21, 2022).

44.    Mr. Carter was finally released on May 26, 2022, 26 days after he was arrested. (Ex. 6, Statement of Release).

45.    For the entirety of his imprisonment, Defendants possessed significant evidence proving Mr. Carter's innocence, including his DNA and cell site location which each confirmed that he was not involved in the Shooting, but did not review, test, or utilize the exculpatory evidence for weeks. (Ex. 3).

46.    On July 26, 2022, Darrick M. Evans and Demetrius R. Puifory were arrested and charged with crimes related to the shooting of Mr. Hall.

47.    Mr. Evans was charged with Accessory After the Fact in Case No. C-18-CR-22-00315.

48.    Mr. Puifory was charged with Murder in the Second Degree, two counts of Using a Firearm in a Violent Crime, Possession of Handgun in a Vehicle, Possession of a Loaded Handgun on Person, and Assault in the First Degree in Case No. C-18-CR-23-000318.

49.     After Mr. Evans and Mr. Puifory were arrested and charged, the charges against Mr. Carter were dropped.

50.    Mr. Evans pled guilty to Accessory After the Fact.

51.    Mr. Puifory was found guilty of all charges after a trial by jury and was sentenced to 40 years in prison on September 16, 2024.

52.    All charges levied against Mr. Carter were dismissed.

## COUNT I
## False Imprisonment
## [Against All Defendants]

53.     Plaintiff re-alleges all paragraphs of this Complaint as if set forth fully herein.

54.     On April 28, 2022, Mr. Hall was tragically shot and murdered in Lexington Park, Maryland.

55.     Defendants immediately identified Mr. Carter as the primary suspect in the Shooting.

56.     Mr. Carter was completely uninvolved in the Shooting despite Defendants' belief to the contrary.

57.     On April 30, 2022, Defendants executed a warrant and seized Mr. Carter's DNA and iPhone.

58.     The cell site data contained on Mr. Carter's iPhone showed that he was not at the scene of the crime when the shooting occurred.

59.     Defendants attempted to perform a forensic download of the iPhone on May 3, 2022 but were unsuccessful because the program used was incompatible with Mr. Carter's phone, and because the iPhone was locked via passcode.

60.     For reasons unknown, Defendants did not request Mr. Carter's passcode until May 16, 2022 – 16 days after taking custody of the iPhone, and 13 days after their unsuccessful attempt to perform a forensic download.

61.     Mr. Carter, through his attorney, voluntarily provided the passcode to Defendants on May 22, 2022.

62.     Defendants then performed a forensic download of the iPhone on May 24, 2022, and reviewed the download on May 25, 2022.

63.    Defendants immediately determined that Mr. Carter was not at the scene of the Shooting when it occurred upon reviewing the iPhone's cell site location.

64.    Further, for reasons unknown, Defendants did not test Mr. Carter's DNA until June 21, 2022 – after he was already released from custody.

65.    Upon being tested, Mr. Carter's DNA did not match the DNA left at the crime scene by the shooter and further confirmed that he was uninvolved in the Shooting.

66.    Despite having exculpatory evidence in their possession, custody, and control, Defendants falsely imprisoned Mr. Carter for 26 days – from April 30, 2022 until May 26, 2022.

67.    For the entirety of his imprisonment, Defendants had exculpatory evidence proving that Mr. Carter was uninvolved in the shooting of Mr. Hall.

68.    Mr. Carter's freedom and liberty of movement were intentionally and unlawfully restricted by Defendants, and he was unable to leave custody.

69.    Mr. Carter's detention was without legal justification as Defendants possessed significant evidence exonerating Mr. Carter for the duration of his detention.

70.    As a result of his false imprisonment, Mr. Carter suffered and will continue to suffer severe mental and emotional distress such as anxiety, depression, and humiliation in addition to economic damages.

WHEREFORE, Plaintiff demands judgment against Defendant for monetary damages, together with interest, costs, and attorney's fees of this action, in excess of $75,000 and such other and further relief as this Honorable Court shall deem just and proper.

## COUNT II
### Violation of Article 24 of Maryland Declaration of Rights – Deprivation of Liberty
### [Against All Defendants]

71.    Plaintiff re-alleges all paragraphs of this Complaint as if set forth fully herein.

72.    On April 28, 2022, Mr. Hall was tragically shot and murdered in Lexington Park, Maryland.

73.    Defendants immediately identified Mr. Carter as the primary suspect in the Shooting.

74.    Mr. Carter was completely uninvolved in the Shooting despite Defendants' belief to the contrary.

75.    On April 30, 2022, Defendants executed a warrant and seized Mr. Carter's DNA and iPhone.

76.    The cell site data contained on Mr. Carter's iPhone showed that he was not at the scene of the crime when the shooting occurred.

77.    Defendants attempted to perform a forensic download of the iPhone on May 3, 2022 but were unsuccessful because the program used was incompatible with Mr. Carter's phone, and because the iPhone was locked via passcode.

78.    For reasons unknown, Defendants did not request Mr. Carter's passcode until May 16, 2022 – 16 days after taking custody of the iPhone, and 13 days after their unsuccessful attempt to perform a forensic download.

79.    Mr. Carter, through his attorney, provided the passcode to Defendants on May 22, 2022.

80.    Defendants then performed a forensic download of the iPhone on May 24, 2022, and reviewed the download on May 25, 2022.

81.    Defendants immediately determined that Mr. Carter was not at the scene of the Shooting when it occurred upon reviewing the iPhone's cell site location.

82.     Further, for reasons unknown, Defendants did not test Mr. Carter's DNA until June 21, 2022 – after he was released.

83.     Upon being tested, Mr. Carter's DNA did not match the DNA left at the crime scene by the shooter and further confirmed that he was uninvolved in the Shooting.

84.     Despite having exculpatory evidence in their possession, custody, and control, Defendants imprisoned Mr. Carter for 26 days – from April 30, 2022 until May 26, 2022.

85.     For the entirety of his imprisonment, Defendants had exculpatory evidence proving that Mr. Carter was uninvolved in the shooting of Mr. Hall.

86.     Defendants unjustifiably deprived Mr. Carter of his liberty when they detained him for 26 days despite having evidence exonerating him of any involvement in the Shooting of Mr. Hall.

87.     Defendants' continued detention of Mr. Carter, in spite of the DNA and cell site location data exonerating him, each of which was in Defendants' possession, custody, and control, was without provocation or legal justification and was done deliberately and with intent to violate Mr. Carter's civil rights under Article 24 of the Maryland Declaration of Rights, including but not limited to, his right to be free from unlawful restriction of liberty, and unlawful detention and freedom of movement.

88.     As a direct and proximate cause of the Defendants' violation of Mr. Carter's Article 24 rights, Mr. Carter suffered emotional and economic damages, including severe emotional distress, loss of wages, and loss of employment.

WHEREFORE, Plaintiff demands judgment against Defendant for monetary damages, together with interest, costs, and attorney's fees of this action, in excess of $75,000 and such other and further relief as this Honorable Court shall deem just and proper.

<u>COUNT III</u>
**Violation of Article 26 of the Maryland Declaration of Rights – Deprivation of Liberty**
**[Against All Defendants]**

89.     Plaintiff re-alleges all paragraphs of this Complaint as if set forth fully herein.

90.     On April 28, 2022, Mr. Hall was tragically shot and murdered in Lexington Park, Maryland.

91.     Defendants immediately identified Mr. Carter as the primary suspect in the Shooting.

92.     Mr. Carter was completely uninvolved in the Shooting despite Defendants' belief to the contrary.

93.     On April 30, 2022, Defendants executed a warrant and seized Mr. Carter's DNA and iPhone.

94.     The cell site data contained on Mr. Carter's iPhone showed that he was not at the scene of the crime when the shooting occurred.

95.     Defendants attempted to perform a forensic download of the iPhone on May 3, 2022 but were unsuccessful because the program used was incompatible with Mr. Carter's phone, and because the iPhone was locked via passcode.

96.     For reasons unknown, they did not request Mr. Carter's passcode until May 16, 2022 – 16 days after taking custody of the iPhone, and 13 days after their unsuccessful attempt to perform a forensic download.

97.     Mr. Carter, through his attorney, provided the passcode to Defendants on May 22, 2022.

98.     Defendants then performed a forensic download of the iPhone on May 24, 2022, and reviewed the download on May 25, 2022.

99.     Defendants immediately determined that Mr. Carter was not at the scene of the Shooting when it occurred upon reviewing the iPhone's cell site location.

100.    Further, for reasons unknown, Defendants did not test Mr. Carter's DNA until June 21, 2022 – after he was released.

101.    Upon being tested, Mr. Carter's DNA did not match the DNA left at the crime scene by the shooter and further confirmed that he was uninvolved in the Shooting.

102.    Despite having exculpatory evidence in their possession, custody, and control, Defendants imprisoned Mr. Carter for 26 days – from April 30, 2022 until May 26, 2022.

103.    For the entirety of his imprisonment, Defendants had exculpatory evidence proving that Mr. Carter was uninvolved in the shooting of Mr. Hall.

104.    Defendants' caused Mr. Carter to be deprived of his right to be free from unlawful restriction of liberty, and unlawful detention and freedom of movement as protected by Article 26 of the Maryland Declaration of Rights when they detained Mr. Carter despite having exculpatory evidence proving that he was uninvolved in the shooting of Mr. Hall.

105.    As a direct and proximate result of the Defendants' actions, Mr. Carter suffered emotional and economic damages, including severe emotional distress, loss of wages, and loss of employment.

WHEREFORE, Plaintiff demands judgment against Defendants for monetary damages, together with interest, costs, and attorney's fees of this action, in excess of $75,000 and such other and further relief as this Honorable Court shall deem just and proper.

### COUNT IV
**Negligence**
**[Against All Defendants]**

106.    Plaintiff re-alleges all paragraphs of this Complaint as if set forth fully herein.

14

107.    On April 28, 2022, Mr. Hall was tragically shot and murdered in Lexington Park, Maryland.

108.    Defendants immediately identified Mr. Carter as the primary suspect in the Shooting.

109.    Mr. Carter was completely uninvolved in the Shooting despite Defendants' belief to the contrary.

110.    On April 30, 2022, Defendants executed a warrant and seized Mr. Carter's DNA and iPhone.

111.    The cell site data contained on Mr. Carter's iPhone showed that he was not at the scene of the crime when the shooting occurred.

112.    Defendants attempted to perform a forensic download of the iPhone on May 3, 2022 but were unsuccessful because the program used was incompatible with Mr. Carter's phone, and because the iPhone was locked via passcode.

113.    For reasons unknown, Defendants did not request Mr. Carter's passcode until May 16, 2022 – 16 days after taking custody of the iPhone, and 13 days after their unsuccessful attempt to perform a forensic download.

114.    Mr. Carter, through his attorney, provided the passcode to Defendants on May 22, 2022.

115.    Defendants then performed a forensic download of the iPhone on May 24, 2022, and reviewed the download on May 25, 2022.

116.    Defendants immediately determined that Mr. Carter was not at the scene of the Shooting when it occurred upon reviewing the iPhone's cell site location.

117.    Further, for reasons unknown, Defendants did not test Mr. Carter's DNA until June 21, 2022 – after he was released.

118.    Upon being tested, Mr. Carter's DNA did not match the DNA left at the crime scene by the shooter and further confirmed that he was uninvolved in the Shooting.

119.    Despite having exculpatory evidence in their possession, custody, and control, Defendants imprisoned Mr. Carter for 26 days – from April 30, 2022 until May 26, 2022.

120.    For the entirety of his imprisonment, Defendants had exculpatory evidence proving that Mr. Carter was uninvolved in the shooting of Mr. Hall.

121.    Defendants owed Mr. Carter a duty of care which, among other things, required them to review and/or test Mr. Carter's DNA and cell site location.

122.    Defendants further owed Mr. Carter a duty of care which required them to release Mr. Carter from custody upon obtaining exculpatory evidence which proved Mr. Carter was not involved in the Shooting of Mr. Hall.

123.    Defendants breached that duty of care by detaining Mr. Carter for 26 days despite having knowledge of his lack of involvement in any crime.

124.    Defendants' negligence proximately caused Mr. Carter to suffer damages including but not limited to economic loss, humiliation, mental anguish, and mental distress for the period of his unlawful detainment and loss of wages and employment.

125.    All such damages were caused by Defendants' negligence, without any negligence by the Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants for monetary damages, together with interest, costs, and attorney's fees of this action, in excess of $75,000 and such other and further relief as this Honorable Court shall deem just and proper.

<u>COUNT V</u>
**Gross Negligence**
**[Against Sheriff Hall, in both his Individual and Official capacities, and St. Mary's County]**

126.    Plaintiff re-alleges all paragraphs of this Complaint as if set forth fully herein.

127.    On April 28, 2022, Mr. Hall was tragically shot and murdered in Lexington Park, Maryland.

128.    Defendants immediately identified Mr. Carter as the primary suspect in the Shooting.

129.    Mr. Carter was completely uninvolved in the Shooting despite Defendants' belief to the contrary.

130.    On April 30, 2022, Defendants executed a warrant and seized Mr. Carter's DNA and iPhone.

131.    The cell site data contained on Mr. Carter's iPhone showed that he was not at the scene of the crime when the shooting occurred.

132.    Defendants attempted to perform a forensic download of the iPhone on May 3, 2022 but were unsuccessful because the program used was incompatible with Mr. Carter's phone, and because the iPhone was locked via passcode.

133.    For reasons unknown, Defendants did not request Mr. Carter's passcode until May 16, 2022 – 16 days after taking custody of the iPhone, and 13 days after their unsuccessful attempt to perform a forensic download.

134.    Mr. Carter, through his attorney, provided the passcode to Defendants on May 22, 2022.

135.    Defendants then performed a forensic download of the iPhone on May 24, 2022, and reviewed the download on May 25, 2022.

136.    Defendants immediately determined that Mr. Carter was not at the scene of the Shooting when it occurred based on the forensic download and the iPhone's cell site location.

137.    Further, for reasons unknown, Defendants did not test Mr. Carter's DNA until June 21, 2022 – after he was released from custody.

138.    Upon being tested, Mr. Carter's DNA did not match the DNA left at the crime scene by the shooter and further confirmed that he was uninvolved in the Shooting.

139.    Despite having exculpatory evidence in their possession, custody, and control, Defendants imprisoned Mr. Carter for 26 days – from April 30, 2022 until May 26, 2022.

140.    For the entirety of his imprisonment, Defendants had exculpatory evidence proving that Mr. Carter was uninvolved in the shooting of Mr. Hall.

141.    Defendants owed Mr. Carter a duty of care which required them to, among other things, review and/or test Mr. Carter's DNA and cell site location.

142.    Defendants further owed Mr. Carter a duty of care which required them to release Mr. Carter from custody upon obtaining exculpatory evidence which proved Mr. Carter was not involved in the Shooting of Mr. Hall.

143.    Defendants breached that duty of care by detaining Mr. Carter for 26 days despite having knowledge of his lack of involvement in any crime.

144.    Defendants' negligence proximately caused Mr. Carter to suffer damages including but not limited to economic loss, humiliation, mental anguish, and mental distress for the period of his unlawful detainment and loss of wages and employment.

145.    All such damages were caused by Defendants' negligence, without any negligence by the Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants for monetary damages, together with interest, costs, and attorney's fees of this action, in excess of $75,000 and such other and further relief as this Honorable Court shall deem just and proper.

## COUNT VI
### Violation of 42 U.S.C. § 1983 – Deprivation of Liberty
[Against Defendants Sheriff Hall, in both his Individual and Official capacities, and St. Mary's County]

146.    Plaintiff re-alleges all paragraphs of this Complaint as if set forth fully herein.

147.    This cause of action is to redress the deprivation, under color of law, the rights secured to Mr. Carter by the Fourth and Fourteenth Amendments to the United States Constitution.

148.    Sheriff Hall, at all times relevant to this complaint, worked as law a enforcement officer with the St. Mary's County Sheriff's Office.

149.    Sheriff Hall acted under color of law and deprived Plaintiff of the rights guaranteed to him by the Fourth and Fourteenth Amendments, including but not limited to the right to be free from the use of unwarranted, excessive, prolonged, and false imprisonment by those cloaked in the authority of the State and the County.

150.    Mr. Carter had a protected property and liberty interest in his freedom, his ability to exercise free will and domain over his person, his bodily integrity and personal security, and his ability to be free from unlawful and unwelcome violation of his person by the police.

151.    Sheriff Hall deprived Mr. Carter of these liberties and rights by refusing to review and/or test the exculpatory evidence in the possession of the St. Mary's County Sheriff's Office, including Mr. Carter's DNA and cell site location, and by detaining Mr. Carter for 26 days after obtaining the exculpatory evidence.

152.    Sheriff Hall acted with ill-will and actual malice when he detained Mr. Carter in spite of the exculpatory evidence in Defendants' possession, custody, and control.

153.    As a proximate result of the above-described actions of Sheriff Hall, Plaintiff suffered damages including, but not limited to, pain and suffering, mental and emotional distress, and the deprivation of his constitutional rights.

WHEREFORE, Plaintiff demands judgment against Sheriff Hall and Prince George's County for monetary damages, together with interest and the costs of this action, in an amount exceeding Seventy-Five Thousand Dollars ($75,000.00), attorneys' fees, statutory damages, and punitive damages in an amount to be determined at trial, and such other and further relief as this Court deems just and proper under the circumstances.

## COUNT VII
### *Longtin* Claim – Unlawful Pattern or Practice of Violating the Maryland Declaration of Rights
### [Against Defendants St. Mary's County and the State of Maryland]

154.    Plaintiff re-alleges all paragraphs of this Complaint as if set forth fully herein.

155.    Defendants conduct, including the deprivation of Mr. Carter's constitutional rights, and his prolonged and false imprisonment, in spite of the exculpatory evidence in their possession, custody, and control, represents not a single isolated, accidental, or peculiar event, but occurred in the regular procedures followed by the St. Mary's County Sheriff's Office and constitutes a pattern or practice of such conduct.

156.    Prior to the date of this incident, Defendants State of Maryland and St. Mary's County permitted and tolerated a pattern or practice of unjustified, unreasonable, and illegal detention and/or imprisonment County citizens.

157.    The State of Maryland and St. Mary's County have failed to properly train, prosecute, supervise, and discipline St. Mary's County sheriffs in the proper constitutional detention and release of the County's citizens, and the review of exculpatory information.

158.    The failure to properly train, prosecute, supervise, and discipline St. Mary's County sheriffs demonstrates a gross disregard for the constitutional rights of the public, and Mr. Carter, and was the proximate cause of Mr. Carter's injuries.

159.    St. Mary's County and the State of Maryland have caused St. Mary's County sheriffs to believe that the prolonged and false imprisonment of County citizens, and the failure to review exculpatory evidence, would not be aggressively, honestly, or properly investigated and that they could detain innocent individuals without reproach.

160.    Based on the history of prolonged detention of County citizens, the State of Maryland and St. Mary's County have established customs and/or policies that fail to detect, investigate, and/or prevent incidents of falsely imprisoning County citizens.

161.    Defendants' actions demonstrate a deliberate indifference and/or tacit approval of prolonged and false imprisonment of County citizens by employees of the St. Mary's County sheriff's office.

162.    As a proximate result of the aforementioned acts, omissions, systemic flaws, policies, and customs, Defendants deprived Mr. Carter of his rights under the Maryland Constitution and Declaration of Rights.

WHEREFORE, Plaintiff demands judgment against the County and the State for monetary damages, together with interest and the costs of this action, which damages exceed Seventy-Five Thousand Dollars ($75,000.00). Plaintiff also seeks equitable preliminary and permanent injunctive relief to, *inter alia*, compel Defendants to (i) institute a meaningful,

transparent and timely public process to review citizen complaints of unlawful and prolonged

detention, (ii) institute a formal, meaningful, transparent and timely process to investigate

complaints of unlawful and prolonged detention, (iii) monitor law enforcement officers accused

of unlawfully detaining County Citizens for prolonged periods, and (iv) institute a formal,

transparent, public and swift discipline, retraining, reporting and monitoring structure for officers

who are found to have unlawfully detaining County Citizens for prolonged periods; (d)

attorney's fees; (e) punitive damages in an amount to be determined at trial; and (f) such further

relief as this Honorable Court deems just and proper under the circumstances.

### COUNT VIII
### *Monell* Claim – Unlawful Pattern or Practice – 42 U.S.C. §1983
### [Against Defendant St. Mary's County and Sheriff Hall, in his Individual and Official Capacities]

163.    Plaintiff re-alleges all paragraphs of this Complaint as if set forth fully herein.

164.    This cause of action is to redress the deprivation under color of statute, ordinance,

regulation, policy, custom, practice or usage of a right, privilege and immunity secured to the

Plaintiff by the Fourth and Fourteenth Amendment to the United States Constitution.

165.    Sheriff Hall's conduct, including, among other things, the deprivation of

constitutional rights, failure to review and or test exculpatory evidence, and false imprisonment

of Mr. Carter, represents not a single isolated, accidental, or peculiar event, but occurred in the

regular procedures followed by the St. Mary's County Sheriff's Office and constitutes a pattern

or practice of such conduct.

166.    Prior to the date of this incident, Defendant St. Mary's County permitted and

tolerated a pattern and practice of unjustified, unreasonable, prolonged, and illegal detention of

County citizens despite possessing exculpatory evidence exonerating the detained individuals.

167. St. Mary's County failed to properly train, prosecute, supervise, and discipline St. Mary's County deputy sheriffs, including Sheriff Hall, in the proper constitutional detention of St. Mary's County citizens.

168. The failure to properly train, prosecute, supervise, and discipline St. Mary's County deputy sheriffs demonstrates a gross disregard for the constitutional rights of the public, and Mr. Carter, and was the proximate cause of Mr. Carter's injuries.

169. St. Mary's County has caused St. Mary's County Deputy Sheriffs to believe that prolonged detention of County citizens, and failure to timely review exculpatory evidence, would not be aggressively, honestly, or properly investigated.

170. Based on the history and problematic pattern of prolonged detentions in St. Mary's County, St. Mary's County has established customs and/or policies that fail to detect, investigate, and/or prevent incidents of prolonged detention of the County's citizens.

171. Defendants' actions demonstrate a deliberate indifference and/or tacit approval of prolonged detention of County citizens by employees of the St. Mary's County Sheriff's Office.

172. As a proximate result of the aforementioned acts, omissions, systemic flaws, policies, and customs, Sheriff Hall deprived Mr. Carter of his rights under the Fourth and Fourteenth Amendments of the United States Constitution.

WHEREFORE, Plaintiff demands judgment against the County for monetary damages, together with interest and the costs of this action, which damages exceed Seventy-Five Thousand Dollars ($75,000.00), and punitive damages in an amount to be determined at trial. Plaintiff also seeks equitable preliminary and permanent injunctive relief to, *inter alia*, compel Defendants to (i) institute a meaningful, transparent and timely public process to review citizen complaints of excessive use of force, (ii) institute a formal, meaningful, transparent and timely process to

investigate complaints of excessive force, (iii) monitor law enforcement officers accused of using excessive force, and (iv) institute a formal, transparent, public and swift discipline, retraining, reporting and monitoring structure for officers who are found to have used excessive force; (d) attorney's fees; (e) punitive damages in an amount to be determined at trial; and (f) such further relief as this Honorable Court deems just and proper under the circumstances.

## JURY DEMAND

Plaintiff demands a jury trial as to all counts so triable.

Respectfully submitted,

JOSEPH, GREENWALD & LAAKE, P.A.

*/s/ Timothy F. Maloney*
Timothy F. Maloney 03381
Kevin S. Redden 21949
JOSEPH, GREENWALD & LAAKE, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770
301/220-2200 (tel.)
301/220-1214 (fax)
Tmaloney@jgllaw.com
kredden@jgllaw.com
*Attorneys for Plaintiff*